UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GOLD FOREVER MUSIC, INC.<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 2:17-cv-13927-GCS-SDD<br>Hon. George Caram Steeh |
| UNITED STATES OF AMERICA<br><br>Counterclaimant,<br><br>v.<br><br>EDWARD J. HOLLAND, JR.<br><br>Counterclaim Defendant. | |

**PLAINTIFF'S MOTION FOR INJUNCTION OF**
**LEVY UNDER §7426(b)(1) PENDING LITIGATION**

Plaintiff, Gold Forever Music, Inc. ("Gold Forever") by and through its attorney, Neal Nusholtz, moves this Honorable Court for an injunction under 26 U.S.C. §7426(b)(1) to stop the IRS's perpetual levy on the revenues of Gold Forever during the pendency of its wrongful levy claim because rights superior to the United States will be irreparably injured if an injunction is not ordered. Local Rule 7.1 Concurrence was sought by email on 5/26/2019 and denied. Reasons are more particularly stated in the attached brief.

Dated: July 9, 2019

Respectfully submitted,

/s/ Neal Nusholtz
Attorney for Plaintiff
Gold Forever Music, Inc.
2855 Coolidge Hwy. Ste. 210
Troy, Michigan 48084
Ph. 248-646-0123
Nusholtz@nnlaw.net
P30223

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| GOLD FOREVER MUSIC, INC.<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 2:17-cv-13927-GCS-SDD<br>Hon. George Caram Steeh |
| UNITED STATES OF AMERICA<br><br>Counterclaimant,<br><br>v.<br><br>EDWARD J. HOLLAND, JR.<br><br>Counterclaim Defendant. | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTION OF LEVY PENDING LITIGATION UNDER §7426(b)(1)**

**QUESTION PRESENTED**

Whether Plaintiff, Gold Forever Music is entitled to an injunction against a perpetual levy during the pendency of its wrongful levy claim.

## CONTROLLING AUTHORITIES

### CASE LAW

*United States v. Rodgers*, 461 U.S. 677 (1983)

### STATUTORY LAW

6331(b)Seizure and Sale of Property

> The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

26 U.S.C. §6331 (f) Uneconomical levy

> (f) No levy may be made on any property if the amount of the expenses which the Secretary estimates (at the time of levy) would be incurred by the Secretary with respect to the levy and sale of such property exceeds the fair market value of such property at the time of levy.

26 U.S.C. §7403(c) Action to enforce lien or to subject property to payment of tax

> (c) Adjudication and decree. The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of

the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

26 U.S.C. §7426. Civil actions by persons other than taxpayers

§7426 (b) Adjudication. The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:

(1) Injunction if a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

§7426 (h) Recovery of damages permitted in certain cases. (1) In general Notwithstanding subsection (b), if, in any action brought under this section, there is a finding that any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of this title the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000 in the case of negligence) or the sum of—

(A) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent disregard of any provision of this title by the officer or employee (reduced by any

amount of such damages awarded under subsection (b)); and

(B) the costs of the action.

## TREASURY REGULATIONS

Treasury Reg. 301.6331-2 Procedures and restrictions on Levies.
(b) Uneconomical levy.

(1)In general. No levy may be made on property if the director estimates that the anticipated expenses with respect to the levy and sale will exceed the fair market value of the property. The estimate is to be made on an aggregate basis for all of the items that are anticipated to be seized pursuant to the levy. Generally, no levy should be made on individual items of insignificant monetary value. For the definition of fair market value, see § 301.6325-1(b)(1)(i). See § 301.6341-1 concerning the expenses of levy and sale.

# TABLE OF CONTENTS


QUESTION PRESENTED ..... i

CONTROLLING AUTHORITIES ..... ii

CASE LAW ..... ii

STATUTORY LAW ..... ii

TREASURY REGULATIONS ..... iv

TABLE OF CONTENTS ..... v

INDEX OF EXHIBITS ..... vii

**TABLE OF AUTHORITIES** ..... viii

ARGUMENT ..... 1

INTRODUCTION ..... 1

A) The Government's Counterclaim Makes an Injunction Necessary ..... 3

B) Statutory Authority for an Injunction ..... 6

C) The Fact Based Jurisdictional Issue ..... 7

D) Facts Relating to the Perpetual Levy Issue ..... 8

E) Thousands of Royalty Transactions ..... 10

F) Obligation to pay must be Unconditional in Order to *Exist*. Obligations Paid in 2016-2017 were not Unconditional in 2012 ..... 11

G) Royalties of Gold Forever are Affected by Services Performed by Gold Forever and Universal in Promoting Gold Forever Songs ..... 13

H) Repeated Government Efforts to Extend the Administrative Levy to After Acquired Property have been Rejected ..... 17

I) Gold Forever will be Entitled to Damages and Costs Under IRC §7426(h)(1) ....................19

CONCLUSION ....................20

**INDEX OF EXHIBITS**

Exhibit A, April 20, 2017 Justice Department Letter ............................................2
Exhibit B, Writers Contracts) .......................................................................2
Exhibit C Schedule of Universal Payments and Writer's shares 2012-2018 ............2
Exhibit D, Johnson Lawsuit ..........................................................................3
Exhibit E, July 1, 1999 Agreement and March 8, 2011 Extension of the Universal BMI Administration contract ..........................................................................8
Exhibit F, Affidavit of Richard Davis ..........................................................9
Exhibit G, 2012 Universal Statement ...........................................................9
Exhibit H, Universal 2013 Statement ..........................................................10
Exhibit I, 2016-2017 Universal Statement ....................................................10
Exhibit J, 2019 Claim ..................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Am. Tr. v. Am. Cmty. Mut. Ins. Co.*, 142 F.3d 920 (6th Cir. 1998) ........................17
*Autenreith v. Comm'r of Internal Revenue*, 115 F.2d 856 (3d Cir. 1940) ...............12
*Bercaw v. Comm'r*, 165 F.2d 521 (4th Cir. 1948) ..................................................12
*Boyd v. United States*, 116 U.S. 616 (1886) ..........................................................19
*First Nat. Co. v. Comm'r*, 289 F.2d 861 (6th Cir. 1961) ........................................12
*Gold Forever Music, Inc. v. United States*, 920 F.3d 1096 (6th Cir. 2019) .............7
*Hamilton Nat. Bank of Johnson City v. United States*, 367 F. Supp. 1110 (E.D. Tenn. 1972), aff'd, 486 F.2d 1405 (6th Cir. 1973 ...............................................17
*Hardman v. United States*, 827 F.2d 1409 (9th Cir. 1987).....................................12
*Henry Vlietstra Plastering & Acoustical Co. v. Internal Revenue Serv.*, 401 F. Supp. 829 (W.D. Mich. 1975)..........................................................................6
*In Re John Mill Hawn*, 149 BR 450 (Bankr. S.D. Tex. 1993), *aff'd in part sub nom. Hawn v. Am. Nat. Bank., No.* CIV. A. C-93-102, 1996 WL 142521 (S.D. Tex. Jan. 23, 1996)..........................................................................15
*Johnson v. Comm'r of Internal Revenue*, 108 F.2d 104 (8th Cir. 1939)................12
*Milton Bradley Co. v. United States*, 146 F.2d 541 (1st Cir. 1944) ........................12
*Mission Primary Care Clinic, PLLC v. Dir., I.R.S.*, 370 F. App'x 536 (5th Cir. 2010) ..........................................................................................................20
*Reiling v. United States*, No. L 76-19, 1977 WL 1244 (N.D. Ind. Aug. 24, 1977), *United States v. Antonio*, No. CIV. 86-1053 ACK, 1991 WL 253021, n2 (D. Haw. Sept. 24, 1991 ...........................................................................14
See *Dyane Smith v. United States*, No. 3:11-CV-01996 VLB, 2014 WL 902589 (D. Conn. Mar. 7, 2014). ........................................................................5
*Stuart v. Willis*, 244 F.2d 925 (9th Cir. 1957) ........................................................3
*Tull v. U.S.*, 69 F3d 394 (9th Cir. 1995) *rvsng* 848 F Supp 1466 (USDC ED CA 1994) ......................................................................................... 15, 16
*U.S. v. Puyallup Tribe of Indians* (USDC, WD WA C13-5122; 2014 WL 1386553 (April 9, 2014).........................................................................................14
United States v. Gen. Motors Corp., 929 F.2d 249 (6th Cir. 1991). .......................13
*United States v. Hemmen*, 51 F.3d 883 (9th Cir. 1995 ...........................................14
*United States v. McDermott*, 507 U.S. 447 (1993).................................................17
*United States v. Rodgers*, 461 U.S. 677 (1983) .................................................. ii, 4
*United States v. Smyers*, No. CV 98-2603 MMM MCX, 1999 WL 250732 (C.D. Cal. Feb. 26, 1999)..........................................................................15
*United States v. Stonehill*, 83 F.3d 1156, (9th Cir. 1996)..........................................7

*United States v. Virgin*, 230 F.2d 880 (5th Cir. 1956)....12
*Zimmerman v. United States*, 318 F.2d 611 (9th Cir. 1963)....12

**Statutes**

26 U.S. C. §6334(a)(9)....20
26 U.S.C. §6331(b) .... 1, 11, 12, 18
26 U.S.C. §6331 (f)....4
26 U.S.C. §7426(h)(1)....19
26 U.S.C. 6331(h) ....2
26 U.S.C.§166.... 11, 12
26 U.S.C.§6331(e) ....2
26 U.S.C.§6532(c)(1)....7
26 U.S.C.§7403.... ii, 4, 5, 6
**26 U.S.C.§7426(b)(1)** .... 1, i, 6, 20
28 U.S.C. 2004....6

**Other Authorities**

Rev. Rul. 55-210 1955-1 CB 544, January 1, 1955....17

ARGUMENT

INTRODUCTION

Plaintiff, Gold Forever, Inc. ("Gold Forever") is a music publishing company, owned by a delinquent taxpayer, Edward Holland, Jr. ("Edward Holland"). Gold Forever seeks a temporary injunction of collection by two 2012 continuous Internal Revenue Service ("IRS") levies while the litigation of its wrongful levy claim is pending. The two 2012 Notices of Levy at issue were dated 8/27/2012 and were served on royalty collection agents, Broadcast Music Inc. ("BMI") and Universal Music Group ("Universal"). (8/27/2012 BMI Notice of Levy, Doc # 8-2, Pg ID 60 and 8/27/2012 Universal Notice of Levy, Doc # 8-3, Pg ID 61). The levies designated Gold Forever as an alter-ego/nominee of Edward Holland. Gold Forever was formed in 1967. Mr. Holland's tax liabilities were assessed during the years 2003-2013.[1]

The 2012 notices of levy have been applied to royalties earned by Gold Forever since 2012, with the first payment to the IRS being owed and made in October of 2013. An IRS notice of levy will "extend only to property possessed and obligations existing at the time thereof." (26 U.S.C. §6331(b)). Continuous levies

[1] Pursuant to FRCP 26(a) Plaintiff's counsel has informally requested a description of the reasons why Gold Forever was treated by the IRS as Edward Holland's alter-ego nominee and the government refused to provide that information.

are an exception to 26 U.S.C. ("IRC") 6331(b). Continuous levies only apply to wages and certain government payments under 26 U.S.C. ("IRC") §§6331(e) and (h).

In 2017, attorneys for BMI had concluded that the 2012 notice of levy might not apply to royalties earned in 2016-2017 and contemplated pursuing judicial relief. The royalties were from record sales, public performances and the commercial use of copyrighted songs (in soundtracks) that had occurred during 2016-2017. On April 20, 2017, an attorney for the Justice Department sent the attorney for BMI a letter threatening BMI with penalties if it sought judicial relief from the levy. Only if BMI made payment to the government would it be "discharged from any obligation or liability." (Exhibit A, April 20, 2017 Justice Department Letter).

Gold Forever's wrongful levy claim was filed after the IRS received a total of $967,140.76, in royalties earned in the years 2016 and 2017. Gold Forever's royalty income is derived from publishing agreements with songwriters. Royalties from the songs are split one-half each between Gold Forever and the songwriters. (Exhibit B, Writers Contracts). As a result of the levy taking all of Gold Forever's revenues, Gold Forever has not been able to pay any of its bills since 2012. That includes the songwriters, its employees, its taxes, and the services of professionals. The songwriters of Gold Forever are currently owed $667,567.81. (Exhibit C

Schedule of Universal Payments and Writer's shares 2012-2018).[2] As a result of the levy, those songwriters may never be paid.

In 2018, the surviving widow of one of the Gold Forever's songwriters joined with her child to sue to cancel her deceased husband's Gold Forever contract for nonpayment. That lawsuit claimed that Edward Holland had converted the funds of Gold Forever to pay his own income taxes. (Exhibit D, Johnson Lawsuit). The Ninth Circuit has called a levy like the one in this case immoral because it prevents the creditors of the company from being paid. *Stuart v. Willis*, 244 F.2d 925, 929 (9th Cir. 1957).

A) The Government's Counterclaim Makes an Injunction Necessary

After a remand in this case, the Government filed a counterclaim to foreclose its lien on Edward Holland's ownership of Gold Forever (ECF# 22, Pg ID 154-159). A number of complications are created by mixing a lien foreclosure with a wrongful levy claim when the party sued and property at issue are not part of the original case.[3] If the perpetual levy persists in this case, the company will have no

---

[2] Of that amount, only $24,980.26 is owed to Edward Holland, Jr. as a songwriter.

[3] The added counterclaim does not appear to be justified under FRCP 13. It relates to Holland's ownership of stock in Gold Forever and does not arise out of the same transaction as the wrongful levy claim that Gold Forever is not Holland's alter ego -- and Holland is not a party. An example of an appropriate lien foreclosure counterclaim would be if the government were foreclosing its lien on Gold Cont'd…

revenue and any sale of the company will result in a zero purchase price because the company will have only debt and no revenue. The Government cannot be allowed to simultaneously maintain its levy on revenues and force a sale.

The IRS cannot levy when the expenses of sale exceed the purchase price, 26 U.S.C. §6331 (f). A federal district court is not bound by §6331(f). "A §7403 proceeding is wholly different from an "administrative levy under 26 U.S.C. § 6331." *Hatchett v. United States*, 330 F.3d 875, 884 (6th Cir. 2003). Under §7403, the Court is only constrained by concepts of equitable discretion. *United States v. Rodgers*, 461 U.S. 677 (1983).

Combining a wrongful levy action with a lien foreclosure brings the Just Compensation clause into the wrongful levy claim under *Rodgers*, *supra*. The songwriters and other creditors who may never be paid are interested parties that are expected to be protected by the Court under *Rodgers*. Under IRC §7403(c), a court is supposed to compensate innocent parties under the Fifth Amendment for their loss when "property interests are 'taken,'" *Rodgers*, at 697. If the court is unsure whether innocent parties will be fully compensated for their loss ("practical

---

Forever, not Edward Holland. See *Lewis G. Allen Family Tr. v. Gov't of U.S.*, 558 F. Supp. 152 (D. Kan. 1982).

undercompensation") that is a factor which balances against a forced sale (*id* at 711).

A successful wrongful levy claim by Gold Forever may serve as a defense to a lien foreclosure because the Court may decide not to participate in the destructive combination of a seven year (illegal) perpetual levy followed by the forced sale of an insolvent company. If the Court forecloses on the lien, it will have given its imprimatur to the effects of a wrongful levy and the Court will become a participant in the destruction of innocent third party rights contrary to the protection of third party rights required by *United States v. Rodgers,* 461 U.S. 677 (1983). See *Dyane Smith v. United States,* No. 3:11-CV-01996 VLB, 2014 WL 902589, at *17 (D. Conn. Mar. 7, 2014). In *Dyane Smith*, the government waited ten years while a divorcee made mortgage payments on a home she had gotten in her divorce and then the IRS sought a sale of the home in a §7403 proceeding. The court declined to force the sale of her home. ("Moreover, the Court again notes that the Defendant's dilatory efforts in collecting the tax liability resulted in continued investment by the Plaintiff in excess of $300,000 in mortgage payments alone. She should not now lose the extent of that investment"). The lawsuit to recoup the funds wrongfully levied on Gold Forever should proceed to its conclusion before any sale is ordered so that Gold Forever can pay its creditors with a return of the funds wrongfully levied upon.

B) Statutory Authority for an Injunction

Injunction of an IRS levy is allowed under IRC §7426(b)(1). "If a levy or sale would irreparably injure rights in property which the court determines to be superior to the rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale." The rights of the songwriters in their royalties are superior in time and right to the United States and if the property is sold without the wrongful levy case being completed, they will likely never get paid. In another Michigan case, the government had argued and the district court acknowledged that creditors of a company are interested parties in a §7426 action. *Henry Vlietstra Plastering & Acoustical Co. v. Internal Revenue Serv*., 401 F. Supp. 829, 833 (W.D. Mich. 1975). The *Vlietstra* court denied the injunction because the creditors could wait for a refund. But here, unlike *Vlietstra,* there is serious doubt as to the validity of a perpetual levy on royalties.

Under §7403(c) the Court is required "to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property…". An issue that must be resolved before a sale can occur is whether the government has or ever had any interest at all in the assets of Gold Forever. Under 28 U.S.C. 2004, a court has the discretion to set the terms of sale of personal property. The Court can determine that the sale of Gold Forever stock will not occur until a

wrongful levy claim has been completed so that payment can be made to the creditors of Gold Forever who have been cheated by an erroneous levy. *United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996) ("…section 2004 provides that sales of personal property must also be conducted 'in accordance with section 2001 ..., unless the court orders otherwise.' 28 U.S.C. § 2004 (emphasis added). Therefore, it is at the district court's discretion"). Gold Forever is asking the Court to enjoin the perpetual levy on Gold Forever during the pendency of its wrongful levy action and to permit said wrongful levy action to reach its conclusion so that the interests of the creditors of Gold Forever, whose rights are superior to the United States, may be repaired.

C) The Fact Based Jurisdictional Issue

The jurisdictional issue on remand is whether obligations paid in 2016 and later were obligations that existed in 2012 at the time of the notice of levy. *Gold Forever Music, Inc. v. United States*, 920 F.3d 1096 (6th Cir. 2019). In this case, the Sixth Circuit has held that the nine month statute of limitations under §6532(c)(1) (amended to 2 years after 2017) runs from no earlier than the date an obligation exists to which the levy may attach. ("A levy attaching to property or the right to property is necessarily antecedent for the statute of limitations to begin running on a wrongful levy action concerning that property.") (*Gold Forever, supra*, at 1100). If the jurisdictional requirement is satisfied, a wrongful levy

claim would be based on the fact that Gold Forever is not the alter ego/nominee of Edward Holland.

D) Facts Relating to the Perpetual Levy Issue

The "Administration Contract" to collect and pay over the royalties of Gold Forever covers the duration of the agreement and the compensation for different types of royalties (sales, public performances and use). (Exhibit E, July 1, 1999 Agreement and March 8, 2011 Extension of the Universal BMI Administration contract ). Per Exhibit "B" of the agreement, BMI income would be collected and accounted for by Universal. The Agreement provided for a $900,000.00 advance and a $600,000.00 loan. The advance and loan were to be repaid first (¶ 6). After repayment of the advance and the loan, the types of royalties covered and the percentage share to be distributed to Gold Forever during 2012-2013 are summarized from paragraph 6 as follows:

| **Transaction** | **Percentage To Be Received by Gold Forever** |
|---|---|
| Public Performance Income | 50% of publisher's net income |
| Mechanical Income -- phonograph records | 70% of net income and 55% for cover if procured by the company |

| | |
|---|---|
| Synchronization income-(soundtracks) | 70% of net income; 65% if procured by Universal synchronizations |
| Print Income | 70% of net income |
| Other Income | 70% of net income |

Rates can differ when Universal procures the transaction. During the duration of the contract, both Universal and Gold Forever might engage in activities to secure business. Gold Forever can promote its songs through re-recordings with new artists and by plugging songs to end users of copyrighted songs. Occasionally Gold Forever will meet with producers in media, such as movie, television, radio and internet companies who may be looking for a particular song that Gold Forever might recommend. Requested songs can be reworked in the studio to suit the needs of an end-user. (Exhibit F, Affidavit of Richard Davis).

Each year, Universal issued bi-annual statements for royalties -- January through June and July through December. The 2012 statements for the year of the levy show that because of the loan and the advance, nothing was owed to Gold Forever at the time of the 8/27/2012 levy (the end of the year had a negative balance of $40,758.08). (Exhibit G, 2012 Universal Statement). The next payment after 8/27/2012 would not have been made until after June of 2013. That means that any payment by Universal would be more than nine months from the date of the levy. The 2013 statement shows that the first payment made to the IRS after

the notice of levy was $119,160.37 on October 10, 2013 -- well after the nine months Statute of Limitations had expired. (Exhibit H, Universal 2013 Statement).

The continuous levies in this case allows the IRS to collect funds past the statute of limitations. That was one of the concerns the Sixth Circuit panel had when it remanded the case. For instance, since the first payment was made in October of 2013, the nine month statute of limitations would prevent Gold Forever from ever contesting payments to the IRS. Moreover, Gold Forever should have been entitled, as a matter of due process notice, to assume in 2012 that if any payments were to be made to the IRS, there would need to be a new levy. Nothing was owed to Gold Forever at the time of the 2012 levy.

E) Thousands of Royalty Transactions

A 2016-2017 Universal statement shows that the royalties at issue consisted of numerous transaction[4]. (Exhibit I, 2016-2017 Universal Statement). The transactions in the 2016-2017 statements are record sales, public performances, and instances of song use. Over a seven year period from 2012-2019 there could have been thousands of individual transactions. It is inconceivable that the tax law would treat all of those thousands of transactions as having existed on August 27,

[4] The 2016-2017 statement does not include payments paid directly from BMI which were normally collected through Universal -- probably because the Justice Department had threatened BMI with penalties.

2012. Someone who bought a record or performed a copyrighted song in 2016 cannot possibly be considered to have done so four years earlier.

F) Obligation to pay must be Unconditional in Order to *Exist*. Obligations Paid in 2016-2017 were not Unconditional in 2012

"[A] levy shall extend only to property possessed and obligations existing at the time thereof." §6331(b). Under Treas. Reg. §301.6331-1(a), an obligation exists if it is fixed and determinable:

> Except as provided in § 301.6331-1(b)(1) with regard to a levy on salary or wages, a levy extends only to property possessed and obligations which exist at the time of the levy. Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date.

In 1972, the terms "fixed" and "determinable" were copied from the January 1, 1959 Treasury Regulations for bad debt deductions under IRC §166.[5] Under IRC §166, the words fixed and determinable define when a legitimate debt exists. Treas. Reg. 1.166-1(c) provides:

> Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or

---

[5] Compare Treasury Decision TD6119, Internal Revenue (Jan. 1, 1955) with Treasury Decision 7180, TD7180, Internal Revenue (Apr. 12, 1972).

> determinable sum of money. See Treasury Decision 6403, (TD6403 Jan. 1, 1959).

The definition of debt under IRC §166 and the definition of debt under IRC §6331 are *in pari materia* and should be construed consistently with one another. Broadening the definition of existing debt under IRC §6331(b) will expand the bad debt deduction under IRC §166.

Under IRC §166, indebtedness "means an existing, unconditional and legally enforceable obligation for the payment of money." *First Nat. Co. v. Comm'r,* 289 F.2d 861, 864–65 (6th Cir. 1961). The rule defining existing debt as being unconditional has appeared in the language of at least seven of the circuit courts. See *Zimmerman v. United States*, 318 F.2d 611, 612 (9th Cir. 1963) ("a debt does not arise for the purpose of section 166 where the obligation to repay is subject to a contingency that has not occurred"); *United States v. Virgin*, 230 F.2d 880, 883 (5th Cir. 1956) ("Not only must the agreement for payment be unconditional, it must be legally enforceable."); *Johnson v. Comm'r of Internal Revenue*, 108 F.2d 104, 107 (8th Cir. 1939); *Hardman v. United States*, 827 F.2d 1409, 1411 (9th Cir. 1987); *Autenreith v. Comm'r of Internal Revenue*, 115 F.2d 856, 858 (3d Cir. 1940); *Bercaw v. Comm'r*, 165 F.2d 521, 525 (4th Cir. 1948) ("The term 'indebtedness' as used in the Revenue Act implies an unconditional obligation to pay"); and *Milton Bradley Co. v. United States*, 146 F.2d 541, 542 (1st Cir. 1944)

("The liability to pay in the future, contingent upon something which may or may not occur, is not indebtedness").

The definition of debt under Treas. Reg. 1.166-1(c) requires that it be a current debtor-creditor relationship based upon a valid and enforceable obligation to pay. An obligation to pay which does not exist until a future date, like future Gold Forever royalties, is not fixed and determinable in 2012. A royalty obligation which is contingent up on: (1) the future purchase of a record; (2) upon the future performance of a song; or (3) upon the future use of a Gold Forever song by media company is not unconditional in 2012.

G) Royalties of Gold Forever are Affected by Services Performed by Gold Forever and Universal in Promoting Gold Forever Songs

IRC §6332 is the code section that imposes penalties on individuals or entities who receive a notice of levy and do not surrender property to the IRS. The penalty is the amount not paid to the IRS (§6332(d)(1)) plus 50% if nonpayment is without reasonable cause (§6332(d)(2)). The levy and the penalty for nonpayment does not apply when a taxpayer does not have "sufficient property rights upon which the Government could levy." *United States v. Gen. Motors Corp.*, 929 F.2d 249, 253 (6th Cir. 1991).

Under Treasury Regulation §301.6331–1(a)(1), as long as the events which gave rise to the obligation have occurred and the amount of the obligation is

capable of being determined in the future, the obligation is fixed and determinable. It is not necessary that the amount of the obligation be beyond dispute. *Reiling v. United States*, No. L 76-19, 1977 WL 1244 (N.D. Ind. Aug. 24, 1977), *United States v. Antonio*, No. CIV. 86-1053 ACK, 1991 WL 253021, n2 at *11 (D. Haw. Sept. 24, 1991).

A contract obligation to pay money is "fixed" when sufficient performance has occurred that "fixes" the obligation. *United States v. Hemmen*, 51 F.3d 883, 890 (9th Cir. 1995). That means, something must have happened which creates the liability. In *U.S. v. Puyallup Tribe of Indians* (USDC, WD WA C13-5122; 2014 WL 1386553 (April 9, 2014)) the Council for the Puyallup Indian Tribe made discretionary per capita distributions to qualified tribe members when circumstances would permit. One of the tribe members, Joshua D. Turnipseed, owed taxes and the IRS served a notice of levy on the Council. After the Council ignored the levy and paid Mr. Turnipseed anyway, the Government sued for penalties under §6332. The court held that until the Council decided to make a distribution, the distributions were not fixed and determinable and, therefore, not subject to the notice of levy.

In one case, the Ninth Circuit found that sufficient services by an auctioneer had not been performed to make auction proceeds subject to the notice of levy.

*Tull v. U.S.*, 69 F3d 394 (9th Cir. 1995) *rvsng* 848 F Supp 1466 (USDC ED CA 1994). The levy was made before the auction had occurred.

At the time the notice of levy in *Tull* was served, the auction contract was open ended as to what was to be sold. The district court held that partial performance of the auction contract by the auctioneer (advertising the auction and cleaning the equipment to get it ready for sale) was sufficient to support the levy. The Ninth Circuit reversed, explaining that an obligation "to sell some as yet undetermined amount of property for an as yet undetermined price to as yet undetermined buyers" was not fixed and determinable. A notice of levy *after* an auction was effective to cover auction proceeds in *United States v. Smyers,* No. CV 98-2603 MMM MCX, 1999 WL 250732 (C.D. Cal. Feb. 26, 1999).

The facts at bar match the *Hawn* case which involved future mineral royalties. *In Re John Mill Hawn,* 149 BR 450 (Bankr. S.D. Tex. 1993), *aff'd in part sub nom. Hawn v. Am. Nat. Bank., No.* CIV. A. C-93-102, 1996 WL 142521 (S.D. Tex. Jan. 23, 1996). In *Hawn,* the taxpayer (Hawn) had assigned his mineral rights to the bank as security for a loan. The IRS served the bank with a levy in 1987. At the time of receiving the notice of levy, the bank had no funds belonging to Hawn. Three years later, the bank had received funds over and above the amount of the loan. The bank paid the surplus of $131,679.00 out to a group that included Hawn's ex-wife, a creditor of Hawn, some of Hawn's expenses, and Hawn. The

IRS sued the bank for the money. The *Hawn* court found that the bank was not liable for failing to honor the levy:

> The right to receive revenues that might be generated from future production from Hawn's property was not a vested, fixed or determinable right to future income existing at the time of the levy. Rather, that income stream represented a purely contingent right to receive certain income in the future. That right was contingent, among other things, on (1) whether minerals were produced, (2) the amount of such production, (3) whether and when the minerals were sold, (4) the sale price for the minerals, and (5) the expenses incurred in generating such production. Since the right to receive future income from production and sale of oil thus was a contingent, non-vested and non-determinable right, the IRS levy could not reach it. *In re Hawn*, 149 B.R. 450, 457 (Bankr. S.D. Tex. 1993), *aff'd in part sub nom. Hawn v. Am. Nat. Bank.*, No. CIV. A. C-93-102, 1996 WL 142521 (S.D. Tex. Jan. 23, 1996).[emphasis added].

In *Hawn*, numerous variables affected the amount and timing of mineral royalties. Those variables prevented the royalties from being vested at the time of the notice of levy. The same rule should apply to the Plaintiff's royalties in the case at bar. Like the Ninth Circuit held in *Tull*, Gold Forever's future music royalties were a "yet undetermined amount of property for an as yet undetermined price to as yet undetermined buyers." *Id.* An obligation to pay Gold Forever its

Royalties does not exist until sales, performances or use of Gold Forever copyrighted songs have occurred.

H) <u>Repeated Government Efforts to Extend the Administrative Levy to After Acquired Property have been Rejected</u>

Federal tax liens extend to after acquired property. *United States v. McDermott*, 507 U.S. 447, 452-55 (1993). A singular levy does not cover after acquired property. *Hamilton Nat. Bank of Johnson City v. United States*, 367 F. Supp. 1110 (E.D. Tenn. 1972), aff'd, 486 F.2d 1405 (6th Cir. 1973. "[T]he IRS's levying power is limited because a levy is an immediate seizure not requiring judicial intervention." *Am. Tr. v. Am. Cmty. Mut. Ins. Co.*, 142 F.3d 920, 924 (6th Cir. 1998).

In 1955, the Internal Revenue Service announced its position that it would treat an IRS levy as having the same after acquired property coverage as a tax lien:

> Upon the basis of the above cited opinions it is the position of the Internal Revenue Service that where a taxpayer has an unqualified fixed right, under a right or a contract, or through a chose in action, to receive periodic payments or distributions of property, a Federal lien for unpaid tax attaches to the taxpayer's entire right, and a notice of levy based on such lien is effective to reach, in addition to payments or distributions then due, any subsequent payments or distributions that will become due thereunder, at the time such payments or distributions become due. Rev. Rul. 55-210 1955-1 CB 544, January 1, 1955.

In the Federal Tax Lien Act of 1966, Congress responded to that IRS position by adding a sentence to IRC §6331(b) limiting an IRS levy to property or obligations existing at the time of the levy:

> …the bill adds a sentence specifying that this right to levy extends only to property of the taxpayer and in the possession of the person on whom the levy is made, or obligations to the taxpayer of the person on whom the levy is made which are existing at the time of the levy. S. Rep. No. 1708 89th Con. 2d Sess., reprinted in [1966] U.S. Code Gong. & Admin. News. p. 3738.

Congress did not intend for levies under §6331(a) to be continuous.

We can expect the government to always seek a continuous levy power which can escape judicial supervision because that would be an increase in government power. The Writ of Assistance which led to the Fourth Amendment was a perpetual levy that also escaped court supervision. In one of the early cases interpreting the Fourth Amendment, the Supreme Court quoted from arguments against the Writ of Assistance that had been made by colonial attorney James Otis in 1761 on behalf of 63 Boston merchants. *Boyd v. United States*, 116 U.S. 616,

625 (1886). Otis's argument was reconstructed in *The Works of John Adams Vol 2* (Appndx A p. 523, 525) [6].

Otis had made the same argument in 1761 that is being made in this case by Gold Forever:

> Writs in their nature are temporary things. When the purposes for which they are issued are answered, they exist no more; but these live forever; no one can be called to account. Thus reason and the constitution are both against this writ. (*id*)

A perpetual levy was the *original* unreasonable seizure.

I) Gold Forever will be Entitled to Damages and Costs Under IRC §7426(h)(1)

Under §7426(h)(1), a claimant is entitled to damages and costs if the government "recklessly or intentionally, or by reason of negligence, disregards any provision "of the tax law. In this case, the IRS took 100% of the income of Gold Forever. At the same time, the IRS also took 100% of Holland's Social Security Benefits, leaving him with nothing. See *Holland v. United States*, No. 17-13926, 2019 WL 1077123 (E.D. Mich. Mar. 7, 2019). Taking all of a delinquent

[6] See the link below:
http://oll.libertyfund.org/titles/adams-the-works-of-john-adams-10-vols

taxpayer's income violates 26 U.S. C. §6334(a)(9). See *Mission Primary Care Clinic, PLLC v. Dir., I.R.S.*, 370 F. App'x 536, 542 (5th Cir. 2010). See also Treas. Reg. §301.6334-2(c). The government is aware of this limitation because in 2016 the Inspector General told the IRS to stop seizing 100% of social security payments.[7] That violation and any other reckless or intentional disregard of the tax laws, allows Gold Forever to recover damages under 26 U.S.C. 7426(h)(1).

CONCLUSION

Since the filing of the complaint, the IRS has received an additional $367,395.67. (Exhibit J, 2019 Claim). There is a significant chance that the songwriters will never get paid their one-half share and other creditors of Gold Forever will never get paid. Increasing the amount levied only makes it worse. 26 U.S.C. §7426(b)(1) permits the Court to issue an injunction against the perpetual levy at issue if the " levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States." The rights of the creditors of Gold Forever are superior to the rights of the United States.

---

[7]*Treasury Inspector General for Tax Administration (TIGTA) Report: Revenue Officer Levies of Social Security Benefits Indicate That Further Modification to Procedures Is Warranted (Reference Number: 2016-30-043), 2016ARD 150-3, Internal Revenue Service (Aug. 4, 2016). The TIGTA report can be found here*: https://www.treasury.gov/tigta/auditreports/2016reports/201630043fr.pdf.

WHEREFORE, Plaintiff prays that this Honorable Court issue an injunction against enforcement of the 2012 perpetual levy issued against BMI and Universal during the pendency of its wrongful levy claim.

Dated: July 9, 2019

Respectfully submitted,

/s/ Neal Nusholtz
Attorney for Plaintiff
Gold Forever Music, Inc.
2855 Coolidge Hwy. Ste. 210
Troy, Michigan 48084
Ph. 248-646-0123
Nusholtz@nnlaw.net
P30223

Certificate of Service

I hereby certify that on July 9, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system and that I served it via the ECF system on the United States of America's counsel.

Dated: July 9, 2019

/s/ Neal Nusholtz
Attorney for Plaintiff
Gold Forever Music, Inc.
2855 Coolidge Hwy. Ste. 210
Troy, Michigan 48084
Ph. 248-646-0123
Nusholtz@nnlaw.net
P30223