IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| GOLD FOREVER MUSIC, INC., | ) | |
| | ) | Case No. 2:17-cv-13927 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD J. HOLLAND, JR., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**DEFENDANT UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO "PLAINTIFF'S MOTION FOR INJUNCTION OF LEVY UNDER § 7426(b)(1) PENDING LITIGATION" (DOC. NO. 23)**

The defendant United States of America opposes the "Plaintiff's Motion for Injunction of Levy Under § 7426(b)(1) Pending Litigation" (Doc. No. 23) that has been filed by plaintiff Gold Forever Music, Inc. ("Gold Forever").

The following brief explains the reasons for the United States' opposition.

WHEREFORE, the defendant United States requests that plaintiff Gold Forever's motion for injunction be denied.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Edward J. Murphy
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-6064 (v)
202-514-5238 (f)
Edward.J.Murphy@usdoj.gov

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Whether the Court should grant Gold Forever's motion for an injunction of IRS levies during the pendency of this litigation.

## CONTROLLING AUTHORITY

26 U.S.C. § 7426(b)(1).

TABLE OF AUTHORITIES

Cases

*Al-Kim, Inc. v. United States*, 1977 WL 1089 (D. Nev. Feb. 14, 1977)……..........15

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992)………………………..9

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998)………………..8 n.2

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999)……………………….....8

*Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984)……………….16

*First Corporate Sedans, Inc. v. United States*, 1996 WL 145958
(S.D.N.Y Apr. 1, 1996)……………………………………………………...11

*Jarro v. United States*, 835 F. Supp. 625 (S.D. Fla. 1992)…………………......…10

*Ketcham v. United States*, 783 F. Supp. 511 (D. Nev. 1991)………………5, 10, 11

*Midwest Fin., Inc. v. United States*, 1992 WL 316317
(S.D. Iowa July 15, 1992), *aff'd*, 991 F.2d 801 (8th Cir. 1993)………………..…11

*Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398 (6th Cir. 1999).…8 n.2

*Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283
(11th Cir. 1990)……………………………………………………….....…10

*Powers v. Ohio*, 499 U.S. 400 (1991)……………………………………...….8

*Rhinehart v. Scutt*, 2014 WL 5361936 (E.D. Mich. June 20, 2014)……………...16

*Ross Controls, Inc. v. U.S. Dept. of Treasury, I.R.S.*, 160 B.R. 527
(E.D. Pa. 1993)……………………………………………………......14, 15

*Sharp Mgmt., LLC v. United States*, 2007 WL 1367698
(W.D. Wash. May 8, 2007)…………………………………………9-10, 11

*United States v. Ovalle*, 136 F.3d 1092 (6th Cir. 1998)……………………………8

*United States v. Rodgers*, 462 U.S. 677 (1983)…………………………..…13 & n.5

*Warth v. Seldin*, 422 U.S. 490 (1975)……………………………………….....8

*Winter v. NRDC*, 555 U.S. 7 (2008)……………………………………..….10-11

Statutes

26 U.S.C. § 6532(c)…………………………………………….………..2, 5, 6

26 U.S.C. § 7403……………………………………………………..….2, 13 n.5

26 U.S.C. § 7421(a)…………………………………………………………...4

26 U.S.C. § 7426(a)(1)………………………………………………..1, 4, 5, 7

26 U.S.C. § 7426(b)…………………………………………………………...4

26 U.S.C. § 7426(b)(1)…………………………………………...……..passim

26 U.S.C. § 7426(b)(2)……………………………………………...…2, 10, 12

26 U.S.C. § 7426(g)…………………………………………………..…….9

TABLE OF CONTENTS

I. Background……………………………………………………………..…1

A. Facts and Procedural History………………………………………1

B. The Statutory Scheme…………………………………………...3

II. Argument…………………………………………………………….5

A. Plaintiff's Wrongful Levy Action Is Untimely………………………6

B. The Levies Will Not Irreparably Injure Rights in Property…………..7

C. Plaintiff Has Not Demonstrated That Others Hold Rights in Levied Property Superior to Those of the United States……………………13

III. Conclusion……………………………………………………………16

BRIEF

The defendant United States of America opposes the "Plaintiff's Motion for Injunction of Levy Under § 7426(b)(1) Pending Litigation" (Doc. No. 23) that has been filed by plaintiff Gold Forever Music, Inc. ("Gold Forever") and requests that the motion be denied.

## I. Background

### A. Facts and Procedural History

This is a wrongful levy action brought pursuant to 26 U.S.C. § 7426(a)(1) by plaintiff Gold Forever Music, Inc. ("Gold Forever"), a music publishing company, regarding two notices of levy dated August 27, 2012, that the IRS served on Broadcast Music, Inc. ("BMI") and Universal Music Publishing ("Universal"), which are third-party payors of royalties. *See* Docs. 8-2 and 8-3. Both notices of levy state that they are against Gold Forever "as nominee/alter ego/transferee of Edward J. Holland." *Id*. Mr. Holland is a well-known songwriter who owes approximately $20 million in federal income tax liabilities and is the 100% owner of Gold Forever. The IRS served the levy notices on BMI and Universal in an attempt to collect Holland's tax debts. *See id*.

The Complaint, filed on December 6, 2017, alleges that the 2012 levies have collected "all of Plaintiff's music royalty income since the date that Defendant had served its 2012 notice of levy." Doc. 1 ¶¶ 2, 6. The Complaint does not seek

injunctive relief under § 7426(b)(1). Rather, Gold Forever claims, under § 7426(b)(2), that it "is entitled to a return of funds wrongfully levied upon," totaling $967,140.76. *Id*. ¶ 9 and prayer for relief. That figure represents the amount of music royalties that the levied parties were allegedly due to pay Gold Forever in late 2016 and 2017 but instead paid to the IRS; it does not include the funds paid to the IRS prior to 2016. Plaintiff's motion for injunction asserts that, "[s]ince the filing of the complaint, the IRS has received an additional $367,395.67," Doc. 23 (br. at 20). An exhibit to the motion is an administrative claim that Gold Forever recently filed with the IRS, seeking a return of these funds, states that the $367,395.67 represents the royalties due for the periods of June 2017, December 2017, and June 2018. Doc. 23-11. If this amount is eventually added to this suit, plaintiff's claim will increase to $1,334,536.43.

On February 6, 2018, the United States moved to dismiss this action as time-barred (Doc. 8) under the limitations period in 26 U.S.C. § 6532(c). This Court granted the motion to dismiss and entered judgment in the United States' favor on July 11, 2018. Docs. 12, 13. Plaintiff appealed, and on April 10, 2019, the Sixth Circuit reversed and remanded. Doc. 16. On remand, the United States filed its Answer as well as a Counterclaim, pursuant to 26 U.S.C. § 7403, for enforcement of the tax liens associated with Holland's liabilities against his ownership interest in Gold Forever. Doc. 22.

On July 9, 2019, plaintiff filed the instant "Motion for Injunction of Levy Under §7426(b)(1) Pending Litigation," Doc. 23, apparently in response to the Counterclaim. *See id.* (br. at 3) ("The Government's Counterclaim Makes an Injunction Necessary"). Plaintiff's motion seeks preliminary injunctive relief against the two levies at issue in this case while the wrongful levy claim is adjudicated, though it does not request a permanent injunction. *See id*.

As an exhibit to its motion, plaintiff has, for the first time, disclosed the Administration Agreement under which BMI and Universal were contractually required to pay to Gold Forever the royalties that have instead been paid to the IRS due to the levy. Doc. 23-6. The Administration Agreement reflects that it expired on June 30, 2018. *Id*. at 18. Given that, it appears the levies served on BMI and Universal will no longer have any effect, so that enjoining enforcement of those levies is moot. In its brief in support of the motion for injunctive relief, plaintiff has also disclosed, for the first time, that, "the first payment made to the IRS after the notice of levy was $119,160.37 on October 10, 2013." Doc. 23 (br. at 9-10).

The United States is filing herewith a renewed motion to dismiss based on the terms of the Administration Agreement and the October 2013 payment, which are new facts on remand not previously available to the Sixth Circuit. Doc. 31.

**B. The Statutory Scheme**

Injunctions against the collection of federal taxes are generally prohibited by

the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." This general prohibition, however, is subject to a list of statutory exceptions, including 26 U.S.C. § 7426(b)(1). That is the statutory exception invoked by plaintiff here, and unless plaintiff fits within its strictures, the motion must be denied.

Section 7426, "Civil actions by persons other than taxpayers," describes, in subsection (a), several "Actions permitted." The first such action, for "Wrongful levy," is permitted under the following circumstances:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

§ 7426(a)(1).

Section 7426(b), "Adjudication," then goes on to explain that, "[t]he district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances," listing five forms of relief. § 7426(b). The first in that list, "Injunction," is only available under the following circumstances: "If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property,

the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale." § 7426(b)(1).

Thus, a plaintiff must prove three elements in order to obtain preliminary injunctive relief in a wrongful levy suit:

[1] that plaintiff timely filed a wrongful levy action within the rules of §§ 7426(a)(1) and 6532(c);

[2] that the levies at issue here, if allowed to persist during the pendency of this litigation, "would irreparably injure rights in property," § 7426(b)(1); and,

[3] that the rights in the property that would be irreparably injured are so obviously "superior to the rights of the United States in such property" that the Court can summarily "determine[]" as much based solely on the pleadings and without the benefit of any discovery. *Id*.

The lack of any one of these three elements would require the denial of plaintiff's motion for injunctive relief. *See Ketcham v. United States*, 783 F. Supp. 511, 519 (D. Nev. 1991) (denying an injunction under § 7426(b)(1) even though the court determined that plaintiff had superior rights in the levied property because there was no irreparable injury to plaintiff's rights in the property).

## II. Argument

Plaintiff cannot satisfy any of the three required elements for injunctive relief against the levies, which will be discussed in turn below.

### A. Plaintiff's Wrongful Levy Action Is Untimely

The United States maintains that this lawsuit is time-barred under § 6532(c) for reasons that are fully explained in the renewed motion to dismiss. Doc. 31.The United States incorporates its renewed motion to dismiss by reference. If the Court grants the renewed motion to dismiss, then all other arguments regarding the propriety of injunctive relief will be moot.

Plaintiff recognizes that there is a live "jurisdictional issue" in this case, Doc. 23 (br. at 7), and spends much of its brief in support of the motion for an injunction arguing why this action should be considered timely. In sum, plaintiff's view is that the 2012 notices of levy did not attach, as of 2012, to its then-existing fixed contractual right to receive royalties from BMI and Universal in subsequent years, and that the § 6532(c) limitations period therefore did not begin to run until each payment was made. The United States' position is that plaintiff is wrong as a matter of law and that dismissal is appropriate now that the contract terms are in the record, making the Sixth Circuit's inferences about the contract no longer valid. Moreover, the United States contends that even if the 2012 levies did not extend to the future royalty payments, this action is still time-barred because plaintiff did not bring suit within 9 months of the October 2013 payment—a payment that was not part of the appeal record either—in light of a regulation (therefore also not addressed in the appeal) that confirms that a cause of action

under § 7426(a)(1) accrues when a levied person pays or turns over property to the IRS, even where the levy does not attach to the property at issue. This is only logical since, otherwise, the very fact of the levy being invalid would preclude the right of the owner to recover the property from the IRS. It follows that the limitations period starts when the cause of action accrues.

While a timely wrongful levy action is obviously a prerequisite to obtaining any relief under § 7426(b)(1), the government notes that even if the Court ultimately agrees with the plaintiff that this suit is not time-barred, that does nothing to establish the other two required elements for an injunction under § 7426(b)(1). Put another way, even if plaintiff succeeds in demonstrating that this suit was brought within the statute of limitations, that has no bearing on whether the levies would irreparably injure rights in property that are superior to those of the United States.[1]

**B. The Levies Will Not Irreparably Injure Rights in Property**

Section 7426(b)(1) limits the availability of injunctive relief in wrongful

[1] Plaintiff's brief contains many irrelevant assertions that the United States believes are inaccurate in various respects—for example, that the Department of Justice "threatened BMI," Doc. 23, br. at 10 n.4; that the United States is liable for damages for levying Holland's social security, *id*. at 19-20; that the levies violate the Fourth Amendment, *id*. at 18-19; and that the levies are somehow "immoral," *id*. at 3—but this response will not address these points because they have no bearing on whether an injunction should issue. Our silence with regard to these irrelevant points should not be misconstrued as agreement with them.

levy actions to situations where the levy or levies at issue “would irreparably injure rights in property.” This exacting standard is not met here.

The only injury alleged in plaintiff’s brief is that the levies are preventing Gold Forever from being able to pay its creditors, including songwriters whom Gold Forever is supposed to pay a portion of the royalties from BMI and Universal that have been diverted to the IRS. As a threshold matter, this alleged injury is insufficient because plaintiffs lacks standing to assert claims on behalf of the third-party songwriters. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (“[A] plaintiff must ‘assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties’” (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))); *see also Powers v. Ohio*, 499 U.S. 400, 410 (1991)); *United States v. Ovalle*, 136 F.3d 1092, 1100-01 (6th Cir. 1998).[2]

The alleged harm to the songwriters, far from being irreparable, could be fully repaired by a decision in Gold Forever’s favor. “The songwriters of Gold Forever are currently owed $667,567.81.” Doc. 23 (br. at 2). Plaintiff repeatedly speculates that, even if it prevails in this wrongful levy action, its “songwriters may

---

[2] A rare exception to this rule arises where a plaintiff can “show that (1) it has suffered an injury in fact; (2) it has a close relationship to the third party; and (3) there is some hindrance to the third party’s ability to protect his or her own interests.” *Mount Elliott Cemetery Ass’n v. City of Troy*, 171 F.3d 398, 404 (6th Cir. 1999); *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998). There is no reason to believe that this exception applies here.

never be paid" unless a preliminary injunction is granted, Doc. 23 (br. at 3), but it never explains why that is the case. *See also id*. at 6 ("[I]f the property is sold without the wrongful levy case being completed, they will likely never get paid."); *id*. at 20 ("There is a significant chance that the songwriters will never get paid their one-half share and other creditors of Gold Forever will never get paid.").

Plaintiff's speculation is unfounded. The Complaint seeks to recover $967,140.76, and, as noted above, that could be increased to $1,334,536.43 based on Gold Forever's recent administrative claim for an additional $367,395.67. Doc. 23-11. If plaintiff is successful, interest will be added to that amount. *See* 26 U.S.C. § 7426(g). A potential judgment for $1.4 million would be more than enough to pay back the $667,567.81 that the writers are alleged to be "currently owed," Doc. 23 (br. at 2), even if the United States offsets against the judgment amount the substantial past-due income tax liabilities owed by Gold Forever.[3]

Courts have repeatedly held that, "harm is not irreparable if it is fully compensable by money damages," *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992), and the instant motion falls squarely within this line of authority. *See Sharp Mgmt., LLC v. United States*, 2007 WL 1367698 at *4 (W.D. Wash.

---

[3] As of May 31, 2019, Gold Forever is liable for income tax liabilities of $465,755.14, and interest continues to accrue. The United States has asserted an affirmative defense for offset of Gold Forever's tax liabilities against any judgment that Gold Forever wins. Doc. 22 (Seventh Defense).

May 8, 2007) ("A temporary loss of funds and consequential financial difficulties does not constitute irreparable harm sufficient to justify an injunction against enforcement of tax liabilities. . . Because the property in question is money-fungible property [that] Sharp can recover should it prevail on the merits there can be no irreparable harm to Sharp's rights."); *Jarro v. United States*, 835 F. Supp. 625, 630 (S.D. Fla. 1992) ("Temporary deprivation of money, in and of itself, cannot constitute irreparable harm, and certainly cannot satisfy the narrower term, 'irreparable injury in property.' 'An injury is 'irreparable' only if it cannot be undone through monetary remedies.' " (quoting *Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990))); *Ketcham*, 783 F. Supp. at 518 (denying § 7426(b)(1) injunction because, "if plaintiff's wrongful levy claim is meritorious, her remedies" under § 7426(b)(2) "will be adequate" and "her interest in the property will not be irreparably lost").

Moreover, it appears the IRS will not be receiving any more funds during the pendency of this case. According to plaintiff's administrative claim, the $367,395.67 that has been paid to the IRS since the start of this litigation is for the royalty periods ending June 2017, December 2017, and June 2018. *See* Doc. 23-11. Since the Administration Agreement expired on June 30, 2018, *see* Doc. 23-6, no more levy payments are forthcoming, thus there is no threat of further ongoing harm to plaintiff and no point in issuing a preliminary injunction. *See Winter v.*

*NRDC*, 555 U.S. 7, 20 (2008) (party seeking preliminary injunction must show that it is "likely to suffer irreparable harm in the absence of preliminary relief"). Contrary to posing irreparable harm, it appears that prospective force of the levies is moot.

Gold Forever's motion is also inadequate because it fails to allege any irreparable injury to rights "*in property*" as the statute requires. § 7426(b)(1) (emphasis added). The irreparable injury must be to the plaintiff's rights in the property itself, not just some generalized injury that would result if the levies were enforced. *See Sharp*, 2007 WL 1367698 at *4 ("[I]rreparable injury exists only when the claimant can show that it will effectively lose rights to the property in question by virtue of the levy."); *First Corporate Sedans, Inc. v. United States*, 1996 WL 145958 at *3 (S.D.N.Y Apr. 1, 1996) ("courts have held that section 7426(b)(1) of the Internal Revenue Code only permits an injunction where the threatened harm relates to the moving party's interests in the levied property itself."); *Midwest Fin., Inc. v. United States*, 1992 WL 316317, at *3 (S.D. Iowa July 15, 1992), *aff'd*, 991 F.2d 801 (8th Cir. 1993) ("[F]or purposes of the wrongful levy statute, irreparable harm is limited to property seized under the statute, not any consequential harm."); *Ketcham*, 783 F. Supp. at 517 ("The protection in the injunction provision . . . appears to relate to the rights in the property levied upon, rather than other property owned by a claimant[.]"). Gold

Forever has not alleged that rights in the underlying music royalties would be injured in any way, thus there is no reason to think that any injury caused by the levies could not be fully repaired through monetary recovery under § 7426(b)(2).

The animating concern behind plaintiff's motion seems to be that if the levy remains in place against Gold Forever's income stream, that will depress the sale price of the Gold Forever stock when it is sold pursuant to the Counterclaim, to the point where there will be insufficient sale proceeds to pay Gold Forever's creditors. *See* Doc. 23 (br. at 4) ("The Government cannot be allowed to simultaneously maintain its levy on revenues and force a sale."). If anything, this would be a reason to delay a sale of the stock, rather than to enjoin the levies. In any event, plaintiff's concern is misplaced because any sale of the Gold Forever stock would be free and clear of the United States' claims to that stock or Gold Forever's other assets, *i.e.*, the levies would be released as a condition of sale.

To be sure, the sale price of the stock may be reduced if potential buyers think the songwriters may have valid claims against Gold Forever for breach of contract, but a stock sale would not in itself preclude payment of such songwriters' claims.[4] Plaintiff also suggests that, "[a] successful wrongful levy claim by Gold

---

[4] We note that in the litigation involving the Estate of General Norman Johnson that plaintiff's brief refers to, Doc. 23 (br. at 3) and Doc. 23-5, Gold Forever has defended on the ground that the songwriter's claim is beyond the statute of limitations (among other grounds).

Forever may serve as a defense to a lien foreclosure," and that it might raise a defense to the Counterclaim on behalf of the songwriters based on *United States v. Rodgers*, 462 U.S. 677 (1983). Doc. 23 (br. at 5). While the government believes these defenses would lack merit, there is nothing stopping plaintiff from raising them, and no need to enjoin the levies in order to have these potential defenses heard.[5] Therefore, the fact that the government has counterclaimed for lien enforcement in this wrongful levy action does not give rise to any irreparable injury that could justify an injunction of the levies under § 7426(b)(1). In any event, the Court must first adjudicate the counterclaim before it could logically threaten any injury.

### C. Plaintiff Has Not Demonstrated That Others Hold Rights in Levied Property Superior to Those of the United States

In addition to limiting the availability of injunctive relief to situations where a levy would cause irreparable injury to rights in property, § 7426(b)(1) further provides that those rights in property that would be irreparably injured must be "superior to rights of the United States in such property." On a motion for preliminary injunction, Gold Forever has the burden of proving superior rights in

---

[5] Again, plaintiff would lack standing to assert a *Rodgers* defense on behalf of the songwriters. *Rodgers* is further inapplicable because it only pertains to situations where the government is selling jointly owned property under § 7403 and at least one of the owners is not liable for the tax. In this case, the taxpayer (Holland) owns 100% of the stock that would be sold.

the levied property to those of the United States. *See Ross Controls, Inc. v. U.S. Dept. of Treasury, I.R.S.*, 160 B.R. 527, 532 (E.D. Pa. 1993) ("Thus, in order to prevail on its motion for preliminary injunction, the burden is on [plaintiff] to demonstrate a persuasive position that it has superior rights in the seized property because it is neither an alter ego nor a continuation of the taxpayer[.]").

Gold Forever has not met this burden. It merely states in conclusory fashion at a few places in its brief that, "[t]he rights of the songwriters in their royalties are superior in time and right to the United States," without offering any explanation or analysis of the priorities. Doc. 23 (br. at 6); *see also id*. at 7 (stating that, "the interests of the creditors of Gold Forever . . . are superior to the United States"); *id*. at 20 ("The rights of the creditors of Gold Forever are superior to the rights of the United States."). There is nothing to indicate that any songwriters hold liens against Gold Forever's assets, and thus it is unclear how their unsecured claims could have priority over any tax liens that have attached to those same assets.

Plaintiff notes that if it can survive the jurisdictional challenge to this suit, then "a wrongful levy claim would be based on the fact that Gold Forever is not the alter ego/nominee of Edward Holland." Doc. 23 (br. at 7-8). Presumably, then, plaintiff's position would be that the United States has no rights in Gold Forever's property, and therefore anyone else's rights in Gold Forever's property would necessarily be "superior." But its brief contains no discussion of why the alter ego

and nominee doctrines do not apply here, and that omission compels denial of the instant motion for preliminary injunctive relief against the levies. *See Ross Controls*, *supra*; *Al-Kim, Inc. v. United States*, 1977 WL 1089 at *4 (D. Nev. Feb. 14, 1977) ("This court has not been presented with any facts indicating that the plaintiffs' rights to the property in question are greater than those of the government. Plaintiffs have offered no evidence that they are not the alter-egos of the taxpayers. Therefore, injunctive relief is denied on the basis of § 7426(b)(1).").

In its brief, plaintiff recounts that it "informally requested a description of the reasons why Gold Forever was treated by the IRS as Edward Holland's alter-ego nominee" and that, "the government refused to provide that information," Doc. 23 (br. at 1 n.1), but the United States' reasoning was presented to the Court in the motion to stay discovery that was filed on July 11, 2019 (Doc. 27). With the Court having denied the motion to stay discovery, Doc. 30, plaintiff has served written discovery requests, and the United States will respond in the normal course.[6]

Plaintiff may say it is unfair to deny its injunction motion when it has not yet

---

[6] A full discussion of the facts and law supporting the United States' position that Gold Forever is the alter ego and nominee of Holland is beyond the scope of this response, but we note briefly that the IRS is hardly alone in viewing Gold Forever as Holland's nominee and alter ego. Holland's former counsel, who at one time served as Secretary of Gold Forever, filed a Complaint in Wayne County Circuit Court in 2004, alleging abuse of the corporate form by Holland. In early 2013, a California state judge ordered that a judgment in favor of both Holland and Gold Forever for more than $240,000 be paid directly to the IRS for application toward Holland's tax debts. *See* Doc. 29 and attached exhibits.

had a chance to discover its case, but courts typically decide motions for preliminary injunctive relief when little or no discovery has taken place. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 603 n.7 (1984) ("The time pressures involved in a request for a preliminary injunction require courts to make determinations without the aid of full briefing or factual development[.]"). If plaintiff later comes into possession of evidence it believes is sufficient to prove that rights superior to those of the United States are being irreparably injured by the levies, then plaintiff can seek injunctive relief at that time, but it is apparent plaintiff lacks such evidence presently, and therefore preliminary injunctive relief should be denied. *See Rhinehart v. Scutt*, 2014 WL 5361936 at *11 (E.D. Mich. June 20, 2014) ("[T]he standard for obtaining injunctive relief is considerably higher than the standard for surviving dismissal." (quotation omitted)).

## III. Conclusion

For the foregoing reasons, plaintiff's motion should be denied.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Edward J. Murphy
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-6064 (v)
202-514-5238 (f)
Edward.J.Murphy@usdoj.gov

Certificate of Service

I hereby certify that I electronically filed the foregoing document on July 26, 2019, and that I served it via the ECF system upon plaintiff's counsel.

/s/ Edward J. Murphy
EDWARD J. MURPHY
Trial Attorney, Tax Division
U.S. Department of Justice