UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOLD FOREVER MUSIC, INC.,

    Plaintiff,                                        Case No. 17-13927

v.                                                      Hon. George Caram Steeh

UNITED STATES OF AMERICA,

    Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
RENEWED MOTION TO DISMISS (ECF NO. 31) AND
<u>PLAINTIFF'S MOTION FOR INJUNCTION (ECF NO. 23)</u>

Before the court is Defendant's renewed motion to dismiss and Plaintiff's motion for injunction of levy, which have been fully briefed. The court heard oral argument on October 10, 2019, and took the matter under advisement. For the reasons explained below, both motions are denied.

<u>BACKGROUND FACTS</u>

This is a wrongful levy action brought pursuant to 26 U.S.C. § 7426(a)(1). The court initially granted Defendant's motion to dismiss on statute of limitations grounds; the Sixth Circuit reversed and remanded for further proceedings. *Gold Forever Music, Inc. v. United States*, 920 F.3d 1096 (6th Cir. 2019). After the mandate was issued, Defendant filed a

-1-

renewed motion to dismiss and Plaintiff filed a motion to enjoin the levy during the pendency of the case.

Plaintiff Gold Forever Music, Inc., is a music publishing company owned by Edward Holland, Jr., a Motown artist who has co-written songs such as "You Can't Hurry Love" and "Stop in the Name of Love" by the Supremes. Gold Forever's catalog includes songs by Holland and other artists. Gold Forever is entitled to royalties when the works in its catalog are sold or performed. Rather than directly licensing its music to third parties, Gold Forever contracts with Broadcast Music, Inc. and Universal Music Publishing to do so. These companies license others to use Gold Forever's music, collect royalties pursuant to those agreements, and remit the royalties to Gold Forever.

Holland owes the Internal Revenue Service approximately $20 million in taxes, interest, and penalties. In an attempt to collect Holland's tax debt, the IRS served notices of levy on BMI and Universal on August 27, 2012. The notices required BMI and Universal to turn over "property and rights to property . . . that you have or which you are already obligated to pay" to Gold Forever. The IRS alleges that Gold Forever is the alter ego of Holland.

The first payment made by BMI and Universal to the IRS in response to the notices of levy was $119,160.37 on October 10, 2013. Additional payments were made from October 6, 2016, to July 26, 2017, in the amount of $967,140.76. Gold Forever seeks the return of the funds remitted in 2016 and 2017, which it contends were wrongfully levied. Gold Forever argues that it is not the alter ego of Edward Holland and that most royalties owed to Gold Forever belonged to artists other than Holland.

Gold Forever filed this action on December 6, 2017. The government moved to dismiss on statute of limitations grounds. Finding that the nine-month statute of limitations began to run when the notices of levy were served in 2012, the court dismissed the action as untimely. The Sixth Circuit reversed, noting that "[a]lthough the district court was correct that service of the notice of levy can start the statute of limitations running for intangible property, it is necessary for the notice of levy to *attach* to the property that is the subject of the wrongful levy action before the statute can run." *Gold Forever*, 920 F.3d at 1102 (emphasis in original). The record did not contain sufficient information to determine whether Gold Forever's right to receive future royalties was attached by the 2012 levies. Assuming that the 2012 levies did not attach future payments, the Sixth Circuit held that the court should have drawn a factual inference in Gold

Forever's favor that "the earliest the statute of limitations could have begun running on Gold Forever's claim was when the IRS seized Gold Forever's funds held by BMI and Universal. . . . Therefore, the district court should have concluded that, on the face of the complaint, this case was properly filed within the statute of limitations." *Id.*

## LAW AND ANALYSIS

### I. Defendant's Renewed Motion to Dismiss

The government has renewed its motion to dismiss on statute of limitations grounds, alleging that additional facts that were not before the Sixth Circuit warrant dismissal. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6); *Miller v. United States*, 838 F. Supp. 338, 339 (N.D. Ohio 1993) (compliance with statute of limitations in suit against the United States a "jurisdictional prerequisite"); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990) (statute of limitations for suit by taxpayer for refund is jurisdictional).

In collecting delinquent taxes, the IRS has the power to levy the taxpayer's property, even if that property is under the control of a third party. *See* 26 U.S.C. §§ 6331, 6332. When the taxpayer's property is held by another, the IRS serves a notice of levy pursuant to 26 U.S.C. § 6332(a). "The third party must comply with the levy demand even if it or

-4-

any other party claims an interest in the levied property." *Gold Forever*, 920 F.3d at 1098. Any person other than the taxpayer who claims an interest in the levied property may pursue a wrongful levy action against the United States under 26 U.S.C § 7426(a). An action under § 7426(a) is "the exclusive remedy for an innocent third party whose property is confiscated by the IRS to satisfy another person's tax liability." *Id.* (citation omitted).

At all times relevant here, the statute of limitations for a wrongful levy action was nine months "from the date of the levy or agreement giving rise to such action." 26 U.S.C. § 6532(c)(1) (2017).[1] A request for the return of levied property under 26 U.S.C. § 6343, made within the nine-month limitations period, extends the limitations period by twelve months. 26 U.S.C. § 6532(c)(2) (2017). "When the property or obligation levied on is intangible, we have held that the notice of levy qualifies as the 'date of the levy' sufficient to start running the statute of limitations for a wrongful levy action." *Gold Forever*, 920 F.3d at 1099 (citation omitted).

This court initially held that the date of the levies was August 27, 2012, the date that the notices of levy were served on BMI and Universal. The court found Gold Forever's suit to be untimely because it was filed more than nine months after August 27, 2012. As the Sixth Circuit noted,

---

[1] The statute was amended in 2017 to extend the limitations period to two years.

however, a levy may "extend only to property possessed and obligations existing at the time thereof." *Id.* (quoting 26 U.S.C. § 6331(b)).  A levy does not reach property acquired after the date of the levy; the levy must "attach" to existing property or obligations for the statute of limitations to begin running.  *Id.* at 1102.  The question on appeal was "whether the 2012 notices of levy reach[ed] the royalties generated after 2012" such that the statute began running in 2012.  *Id.* at 1099.

> As the Sixth Circuit explained:
>
>> The answer to that question depends on whether the royalties remitted to the IRS beginning in 2016 were fixed and determinable in 2012 when the notices of levy issued. If they were not fixed and determinable, the notices of levy could not reach the royalties and the limitations period could not begin to run.  If they were fixed and determinable, the notices of levy would have been sufficient to qualify as the "date of the levy" under § 6532(c)(1), beginning the limitations period.

*Gold Forever*, 920 F.3d at 1099.  *See also* 26 C.F.R. § 301.6331-1(a) ("Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date.").  The court further noted that it had "not previously addressed when an existing contractual obligation to pay the taxpayer in the future is sufficiently fixed and determinable such that a levy can attach to that future payment."  *Id.* at 1100.  In determining the issue, the court looked to

-6-

decisions from other circuits, primarily *Tull v. United States*, 69 F.3d 394, 397 (9th Cir. 1995) and *United States v. Hemmen*, 51 F.3d 883 (9th Cir. 1995). The court concluded that

> These cases stand for the principle that a contractual obligation to pay money (or remit property) to the taxpayer after the date of the levy is "fixed" where performance is complete and all that remains under the contract is payment (provision of property) to the taxpayer, and "determinable" if, at the time the levy is served, the amount that the taxpayer will be owed can be ascertained with reasonable accuracy, regardless of whether that amount is subject to potential defeasance.

*Gold Forever*, 920 F.3d at 1101.

At the time of the initial motion to dismiss and appeal, the agreement between Gold Forever and BMI/Universal was not in the record. As a result, the Sixth Circuit concluded that

> the district court should have drawn factual inferences in Gold Forever's favor and concluded that nothing remitted in 2016 and beyond represented any obligation owed in 2012 – *i.e.*, the royalties had not yet been generated and so there was more remaining to be done under the contract, such as finding licensees and collecting royalties, than to simply remit royalties to Gold Forever. Taking the facts in the light most favorable to Gold Forever, the only thing that existed in 2012 was the obligation to remit royalties generated in the future.

*Id.* at 1102.

The agreement between Gold Forever and BMI/Universal is now in the record. *See* ECF No. 23-6. The administration agreement provides

that BMI/Universal is Gold Forever's agent and exclusive administrator of all musical compositions owned by Gold Forever. *Id.* at 1. The agreement gives BMI/Universal the exclusive right to license, administer rights, print, publish, sell, and collect monies earned with respect to the musical compositions. With respect to royalties, BMI/Universal pays Gold Forever a percentage of "net income" derived from licenses, including public performances, phonograph records, soundtracks, and printed editions. "Net income" is defined as "Gross Income actually received by Company in the United States, less the costs actually incurred by Company in connection with the Compositions. . . ." *Id.* at 10. BMI/Universal computes the royalties earned by Gold Forever twice a year and remits "the Net Amount of such royalties, if any, that shall be payable under this Agreement." *Id.* at 7.

The government argues, in light of the terms of the agreement, the inferences made by the Sixth Circuit are unwarranted. The factual inferences made by the Sixth Circuit, however, are borne out by the terms of the administration agreement. Under the agreement, royalties remitted in 2016 "had not yet been generated" in 2012 and "there was more remaining to be done under the contract, such as finding licensees and collecting royalties, than to simply remit royalties to Gold Forever." *Gold*

*Forever*, 920 F.3d at 1102. Royalties generated and remitted in 2016 were derived from sales and performances that did not exist in 2012. "Taking the facts in the light most favorable to Gold Forever, the only thing that existed in 2012 was the obligation to remit royalties generated in the future." *Id.*

The government seeks to reframe the issue by arguing that although the levy did not attach to each future payment under the agreement, it nonetheless attached to the contractual right to payment itself, thereby capturing all future payments. This argument appears to be foreclosed by the Sixth Circuit's opinion, which acknowledged that the contractual right to payment was the only existing property that could be attached in 2012. *Gold Forever*, 920 F.3d at 1099 ("*The only property or obligation to which the levy could potentially attach in 2012 were Gold Forever's agreements with BMI and Universal to remit future royalties to Gold Forever.* So, the question on appeal is whether the 2012 notices of levy reach the royalties generated after 2012 by virtue of the agreements in place when the notices of levy were served."). The Sixth Circuit appears to have accepted the government's premise – that the levy could have attached to the contractual right to future payments. Nonetheless, the court found that this

right was not sufficiently fixed or determinable for the levy to capture future payments.

The government points out that an "unqualified contractual right to receive property is itself a property right subject to seizure by levy." *United States v. National Bank of Commerce*, 472 U.S. 713, 725 (1985) (quoting *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1302 (1980)). Gold Forever's contractual right to future royalties is not "unqualified," but contingent upon BMI/Universal negotiating licenses and the actual performance or sale of Gold Forever's musical compositions. Further, although the right to receive property is subject to levy, the obligation created by that contractual right must be fixed and determinable for the levy to attach. *See Gold Forever*, 920 F.2d at 1100 (addressing "when an existing contractual obligation to pay the taxpayer is sufficiently fixed and determinable such that a levy can attach to that future payment"). *See also In re Hawn*, 149 B.R. 450, 457 (Bankr. S.D. Tex. 1993) (right to receive future income from production of oil was "not a vested, fixed or determinable right to future income existing at the time of the levy" but was "a purely contingent right to receive certain income in the future"); *Armstrong v. U.S.*, 7 F. Supp. 2d 758, 766 (W.D. Va. 1998) ("A promise to pay money does not become such a property interest until the payment no

longer depends upon a condition which has not been fulfilled."); *In re Trammell*, 584 B.R. 824, 831 (Bankr. E.D. Tenn. 2018) ("[A] one-time levy may seize a future stream of payments if the taxpayer's right to the payments is fixed and determinable without any requirement for the provision of future services.").

The cases upon which the government relies involve fixed contractual rights or obligations, such as lease or disability payments. *See Kirk v. United States (In re Kirk)*, 100 B.R. 85, 89 (Bankr. M.D. Fla. 1989) (retirement disability benefits); *Hines v. U.S.*, 658 F. Supp.2d 139, 146 (D.D.C. 2009) (social security benefits an "existing right"); *KMG Prop. v. IRS*, 2009 WL 1885930 (W.D. Pa. June 30, 2009) (lease payments). Here, the Sixth Circuit distinguished Gold Forever's agreement with BMI/Universal as "merely 'an obligation to attempt to sell some as yet undetermined amount of property for an as yet undetermined price to as yet undetermined buyers.'" *Gold Forever*, 920 F.3d at 1102 (quoting *Tull*, 69 F.3d at 397). As discussed above, the Sixth Circuit's inferences regarding the agreement are confirmed by its actual terms.

The government also suggests that Gold Forever's contractual right to future royalties was sufficiently fixed because no further performance was required from Gold Forever. Again, the government's argument is

-11-

foreclosed by the Sixth Circuit's ruling. The Sixth Circuit did not base its holding on the inference that additional performance by Gold Forever may have been required by the agreement. In finding that the agreement with BMI/Universal did not create a fixed and determinable obligation, the Sixth Circuit inferred that "there was more to be done under the contract" by *BMI/Universal*, "such as finding licensees and collecting royalties." *Gold Forever*, 920 F.3d at 1102. Again, this inference is consistent with the terms of the contract.

Consistent with the Sixth Circuit's ruling, the court finds that Gold Forever's right to collect future royalties was not sufficiently fixed and determinable for the levies to attach to future payments. Because the levies did not attach to future payments, the statute of limitations did not begin to run as to those future payments when the notices of levy were served in 2012.

In the alternative, the government argues that Gold Forever's suit is nonetheless untimely because the statute began to run when BMI/Universal made the first payment to the IRS, in October 2013. The Sixth Circuit stated that, assuming the statute did not begin running in 2012, "the earliest the statute of limitations could have begun running on Gold Forever's claim was when the IRS seized Gold Forever's funds held

by BMI and Universal." *Gold Forever*, 920 F.3d at 1102. However, it is not clear why the 2013 seizure of funds, which Gold Forever is not challenging here, should be considered the "date of the levy" and start the statute of limitations running for seizures that did not occur until 2016 and 2017. Given that the 2012 notices of levy did not capture the stream of future payments, treating each subsequent payment as a separate seizure appears to be most consistent with the Sixth Circuit's opinion. It follows that the statute begins to run on the date of payment – "the date of the levy" – with respect to that payment only. *See id.* ("The term 'levy' as used in this title includes the power of distraint and seizure by any means.") (quoting 26 U.S.C. § 6331(b)); 26 U.S.C. § 6532(c)(1) (2017) (providing that wrongful levy action may only be brought within nine months "from the date of the levy or agreement giving rise to such action").

For these reasons, the court finds that Gold Forever's suit is timely and will deny Defendant's renewed motion to dismiss.

II.     Gold Forever's Motion for Injunction of Levy

Gold Forever seeks a temporary injunction of collection pursuant to the 2012 levies while this litigation is pending. The court may grant an injunction pursuant to 26 U.S.C. § 7426(b)(1), which provides: "If a levy or sale would irreparably injure rights in property which the court determines

to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale." Gold Forever contends that most of the royalty payments seized by the IRS from BMI/Universal belong to songwriters other than Holland, who have a superior right to that property.

The government argues that Gold Forever has not established irreparable harm. Even if the government has seized property belonging to others, such harm is compensable by money damages and is not irreparable. *See generally Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("[H]arm is not irreparable if it is fully compensable by money damages.").

Moreover, the administration agreement between Gold Forever and BMI/Universal expired on June 30, 2018. ECF No. 23-6. It appears that BMI/Universal will not owe Gold Forever any further payments that could be levied and, therefore, there are no potential levies/seizures to be enjoined.

Gold Forever has not met its burden of demonstrating that injunctive relief is proper. Accordingly, the court will deny the motion.[2]

---

[2] The court notes, however, that the government's attempt to seize future royalty payments pursuant to the 2012 notices of levy would be inconsistent with the court's ruling that the notices of levy did not attach to future payments.

CONCLUSION

IT IS HEREBY ORDERED that Defendant's renewed motion to dismiss (ECF No. 31) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for injunction of levy (ECF No. 23) is DENIED.

Dated: October 17, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on October 17, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---